# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7108 | **DATE** | 3/28/2003 |
| **CASE TITLE** | Michael J. Vallone et al. vs. CNA Financial Corp. etc et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment on the one remaining count is granted. Plaintiffs ' motion for class certification is denied as moot. (#108-1, #49-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAR 28 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | G.Y. | 125 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 03 MAR 28 PM 2:38 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL J. VALLONE and JOYCE E. )
HEIDEMANN, and JAMES O'KEEFE, on )
behalf of themselves and all other plaintiffs )
similarly situated known and unknown, )
              )
       Plaintiffs, )
              )
   vs. )  No. 98 C 7108
              )
CNA FINANCIAL CORPORATION, a/k/a )
CNA Casualty of Illinois, and The )
CONTINENTAL INSURANCE COMPANY, )
and all their subsidiaries, parent companies, )
partnerships, and corporations, )
              )
       Defendants. )

DOCKETED
MAR 2 8 2003

## MEMORANDUM OPINION AND ORDER

This lawsuit is a purported class action brought on behalf of individuals who elected early retirement from the Continental Insurance Company in 1992. On December 28, 2000, we granted defendants' motion for summary judgment as to counts I, II, IV and V of plaintiffs' complaint. Vallone v. CNA Financial Corp., 128 F.supp2d 1131 (N.D.Ill. 2000). Plaintiffs have one remaining claim, breach of fiduciary duty in violation of Section 404 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1104. Defendants move for summary judgment. For the following reasons, defendants' motion is granted.

### BACKGROUND

Plaintiffs are former employees of Continental Insurance Company (Continental) who elected to take early retirement from the company in 1992 pursuant to a Voluntary Special Retirement Program (VSRP). The VSRP offered special health care benefits that differed

from the benefits extended to regular retirees under Continental's Comprehensive Health Care and Dental Plan (the Plan). One such feature involved the Retiree Health Care Allowance (HCA), a subsidy provided by Continental to help offset heath care costs.

The VSRP was formally introduced to human resource managers and officers in mid-October, 1991, at a three-day meeting in New York (New York meeting). The parties dispute whether statements were made during that meeting regarding whether the HCA was a benefit that could be eliminated, or if it was a lifetime benefit. Plaintiff Joyce Heidemann testifies that in her position as assistant vice-president of human resources, she attended the New York meeting and was told, along with about fifty other managers and officers, that the VSRP would include a lifetime HCA. She and her colleagues were then told to provide this information to all eligible employees within their regions. Plaintiffs offer supporting testimony from another employee that during October officers and senior mangers of Continental referred to the HCA as a lifetime benefit (Mostroberti dep., pp. 21-22).

On November 21, 1991, a packet of materials was sent to employees who were eligible to retire under the VSRP (def. exhs. 9-14). The packet included a brief description of the program, which refers the reader to Continental's general benefit guide, to determine the differences between the HCA and the company's alternative Retiree Health Care Contribution, the two options available to regular retirees in 1991. It then goes on to state that if "you take advantage of the [VSRP], the Company subsidy for your Retiree Health Care Benefits will be payable to you only as a Retiree Health Care Allowance." The packet also included an individual calculation worksheet that explained to each potential retiree that under the VSRP he would receive $465.00 per month until age 65 and "$180.00 per month

thereafter" as his HCA. Additionally, the packet contained a copy of Continental's guide for employees considering retirement in 1992, described in the cover letter of the packet as a guide that provides information about the benefits available during retirement.

Local meetings were subsequently held between human resources personnel and eligible employees to answer questions about the VSRP. One such meeting was held in Chicago and attended by plaintiff Michael Vallone. At that meeting, Joyce Heidemann presented the VSRP and, in response to a question about the HCA, allegedly responded that the HCA was a benefit for "your lifetime" (Vallone dep., pp. 77-79). Vallone's testimony that human resource personnel represented the HCA as a lifetime benefit is confirmed by deposition and affidavit testimony from other attendees at the Chicago meeting, as well as attendees at meetings in New Jersey, Pennsylvania, California, Hawaii, New York, Ohio, Kentucky, Georgia, Colorado and Texas (plfs. exhs. L, N, O, T, U, V, W, Y, Z, AA, BB, CC, DD, FF, GG, HH, II, JJ, KK, LL, MM, NN, OO, PP).

CNA Financial Corporation (CNA) acquired Continental in 1995. In August 1998, CNA informed all retired Continental employees that the HCA benefit would be terminated as of December 21, 1998. This termination of benefit affected all retirees, including those who retired under the VSRP. Some early retirees filed appeals contesting this decision, arguing that under the VSRP their HCA benefits were irrevocable. In February 1999, the Plan administrator denied their appeals, stating that early retirees were not provided with a lifetime health care allowance and that CNA's decision to terminate these subsidies was appropriate and final.

## DISCUSSION

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Some of the arguments presented in the briefs have already been addressed in our prior opinion, Vallone v. CNA Financial Corp., et al, 128 F.Supp. 2d 1131, 1134 (N.D.Ill. 2000). To summarize, nothing in the VSRP literature itself can reasonably be read to create a vested lifetime benefit in the HCA. *Id.* at 1136. Continental's documents relating to the Plan for regular retirees, such as the summary plan description and the company's annual guides to benefits, contain reservation-of-rights clauses which give Continental the right to terminate or amend the Plan at any time. We determined that the VSRP should be read together with Plan documents since the VSRP materials and packet references these documents. *Id.* at 1137. It follows that the reservation-of-rights clauses contained in the Plan, giving Continental the right to terminate or amend the Plan at any time, also apply to the HCA under the VSRP. *Id.* The issue before us now, then, is whether in the face of the reservation-of-rights clauses the alleged oral representations that the HCA was a lifetime benefit constitute a breach of fiduciary duty.

ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 19 U.S.C. § 1104(a)(1). While not every misrepresentation regarding a plan is actionable, Frahm v.Equitable Life Assurance Society of the United States, 137 F.3d 955, 959-960 (7th Cir. 1998), widespread misrepresentation

regarding benefits may violate ERISA fiduciary duties. <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996). Plaintiffs offer persuasive caselaw from other circuits which have dealt with similar facts and have supported claims for breach of fiduciary duty. *See e.g.* <u>James v. Pirelli</u> 305 F.3d 439 (6th Cir. 2002); <u>Abruscato v. Empire Blue Cross and Blue Shield</u>, 274 F.3d 90 (2nd Cir. 2002) (evidence of oral representations to plan participants that benefits were "lifetime" benefits was sufficient to create a genuine issue of material fact, despite evidence that they had also been advised in writing of a reservation of rights to terminate benefits); <u>In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation</u>, 57 F.3d 1255 (3rd Cir. 1995)(despite employer's right to terminate plans, fiduciary duty claim could go forward based on alleged representations and literature that benefits would continue for life when employer knew of retirees' confusion). Under these cases, plaintiffs' claim would likely survive this summary judgment motion.

ERISA fiduciary duty is not viewed as broadly in this circuit. In <u>Frahm</u>, *supra*, the Seventh Circuit considered allegations that advice was given to retirees which stressed the availability of lifetime benefits and did not state that these benefits could be terminated. 137 F.3d at 959. The court held that these allegations would not support a fiduciary duty claim, noting that in the face of plan documents that stated otherwise, upholding oral representations of future benefits would be inconsistent with the more general ERISA principle of adherence to written plans. *Id.* at 960. Citing <u>Varity</u>, the court found that the allegations did not describe "a campaign of disinformation that led employees to surrender their benefits" and, accordingly, failed to support a fiduciary duty claim.

So what are the facts here? A Heidemann affidavit prior to her deposition could be

construed as saying that she was told that the benefits were irrevocable and told to so advise employees. Defendants argue that her affidavit is inconsistent with her deposition and should be disregarded. We disagree. In her deposition she had no recollection of anyone saying the benefits were irrevocable. The subject did not come up. Rather, she believed that the VSRP was a separate and distinct plan and, in the absence of any representations to the contrary, the benefits were therefore irrevocable. That testimony is not inconsistent with her affidavit, which does not expressly state she was told that the benefits were irrevocable.

It is clear, from the perspective of the evidence most favorable to plaintiffs, that employees were told that the benefits were for them and their spouses' lifetimes, that they were not told that the benefits could be changed (although they were referred to documents that reserved the right to change benefits), that they were not told the benefits were irrevocable, that many employees therefore concluded that the benefits were irrevocable for reasons similar to Heidemann's reasons, that that conclusion was material to their decision to retire, that Continental had no then intention of changing those benefits, and that the intention and decision to change benefits came several years later, after CNA acquired Continental.

In hindsight, it would have been far better if Continental had pointed out the fragility of those benefits during the six-week window for the VSRP, as it is obvious that its failure has left a bad taste in the mouths of many long-time and loyal former employees. But here Continental's failure was a failure to distinguish between its then policy to freeze retiree benefits and its legal obligation, which left it free to change its mind. It did not set out to deceive or disadvantage plan participants, and plaintiffs' claims are thus doomed by Frahm, *supra*.

## CONCLUSION

Defendants' motion for summary judgment on the one remaining count is granted. Plaintiffs' motion for class certification is denied as moot.

*JAMES B. MORAN*
JAMES B. MORAN
Senior Judge, U. S. District Court

March 28, 2003.